UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF AN ARREST WARRANT AND SEARCH WARRANTS | No. 3:20MJ1039(SALM) _____ **Filed Under Seal** |

AFFIDAVIT

John T. Souvlis, being first duly sworn, hereby deposes and states the following:

General Background

1.     I am a duly appointed Special Agent of the Federal Bureau of Investigation ("FBI") and have been employed as such for 10 years. I am currently assigned to a Counterterrorism Squad in New Haven, Connecticut.  As part of my duties as an FBI agent, I investigate violations related to weapons of mass destruction ("WMD") including, but not limited to, violations pertaining to the use, threat, or attempt to use of a WMD, in violation of 18 U.S.C. § 2332a.

2.     I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to investigate and to make arrests for offenses enumerated in 18 U.S.C. §§ 876(c), 1038(a)(1), and 2232a(a).

3.     This affidavit is made in support of (1) an application for a criminal complaint authorizing the arrest of Nicholas Sepesko (or "Sepesko"), born 1950, for violation of 18 U.S.C. §§ 876(c) and 1038(a)(1); and (2) an application for search warrants authorizing the search of (a) Sepesko's residence at 110 Sherman Avenue, Hamden, Connecticut ("Target

Premises") as described in Attachment A-1 and (b) Sepesko's person as described in Attachment A-2, and the seizure of those items listed in Attachment B.

4. Sepesko does not appear to be employed and may be receiving disability benefits. He has no criminal record.

5. Federal law prohibits the following as relevant here:

(a) To knowingly mail or cause to be mailed by the U.S. Postal Service according to the directions thereon a communication to any other person containing any threat to injure the person of the addressee or of another (18 U.S.C. § 876(c));

(b) To engage in conduct with the intent of conveying false or misleading circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of chapters 2, 10 (Biological Weapons) of Title 18, United States Code (18 U.S.C. § 1038(a)(1)); and

(c) To use, threaten, or attempt to use a weapon of mass destruction against any person or property within the United States, and the mail or any facility of interstate commerce is used in furtherance of the offense (18 U.S.C. § 2332a(a)).

The first two offenses, 18 U.S.C. §§ 876(c) and 1038(a)(1), are the Subject Offenses.

6. The current investigation stems from a person who received threatening letters over the course of two years beginning in or around October 2018. I met and spoke with this person who lives in Wallingford, Connecticut and who I will refer to as the "Victim" so as to protect his/her identity. As of the date of this writing, I am aware of approximately 15 letters to the Victim, the last three of which referred to and contained powdery substances. The

most recent handwritten letter addressed to the Victim was undated, was collected on November 18, 2020 from the Target Premises' mailbox, and contained an unknown, powdery substance. In my view, the letters have become more frequent and appear to demonstrate an escalation of threats.

      7.     I am a certified WMD Coordinator through the FBI. As such, I have received training in the areas of chemical, biological, radiological, and nuclear threats, and have had the opportunity to participate in numerous responses and investigations related to such matters as they pertain to WMD violations (as defined in 18 U.S.C. § 2332a(c)(2)). Through my employment with the FBI, I have gained knowledge in the use of various investigative techniques including the utilization of physical surveillance, undercover agents, confidential informants and cooperating witnesses, consensually monitored recordings, investigative interviews, analyzing telephone pen register and caller identification system data, and the execution of search and arrest warrants. Through formal training and participating in investigations, I have become familiar with the manner in which criminal offenders conduct activities related to WMD production and the methods, language, and technical terms associated with such activities.

      8.     Through formal training and participating in investigations, I have also become familiar specifically with the operational response and mitigation of suspected biological and chemical threats in cases where targeted victims received suspicious/threatening mail containing an unknown powdery substance, where the intent of the sender has been exposure of a potential victim to an actual or threatened biological or chemical agents.

9. This affidavit is based, in part, upon information provided to me by officers of the Wallingford, Connecticut Police Department ("WPD"), Hamden, Connecticut Police Department ("HPD"), United States Postal Inspection Services ("USPIS"), people familiar with the events, and other information gathered during the course of this investigation. Since this affidavit is being submitted for the limited purposes of obtaining an arrest warrant and search warrants, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts which I believe are necessary to establish probable cause.

10. On the basis of my personal knowledge and other information that I have reviewed and determined to be reliable, there is probable cause to believe, and I do believe, that on or about November 18, 2020 in the District of Connecticut, Nicholas Sepesko knowingly mailed or caused to be mailed a letter to the Victim containing threats to injure the Victim and intended to convey false or misleading information where the information regarding the threatened use of a toxin under circumstances where such information may reasonably be believed, in violation of the Subject Offenses.

## The Investigation

11. On October 9, 2020, I received a report of a letter dated "9/20/20" containing an unknown, powdery substance being opened at the WPD, 135 North Main Street, Wallingford, WPD, Wallingford Fire Department, Connecticut State Police, the Connecticut Department of Energy and Environmental Protection, and I responded. The mailing was addressed to the Victim at the Victim's Wallingford residence, had no return address, and was postmarked October 6, 2020. WPD retrieved the letter from the Victim due to the

Victim's receipt of approximately 12 previous mailings that appeared to be related.  The words in the letter included, "I just got you!!!! Look at the inside envelope + note! HAHA!! What is it maybe nothing, maybe Rat poison you figure it out."  The letter also stated, "Check you Tail pipes really good before you Take it To you wood be Thug job + she goes shopping."    In the context of all the letters I have reviewed, the reference to a tail pipe in this and other letters explained below may be interpreted as a threat about the writer placing an explosive in the Victim's and/or the Victim's spouse's vehicle exhaust systems.

      12.      On October 22, 2020, I retrieved two mailings that were addressed to the Victim at the Victim's Wallingford residence and are postmarked April 10, 2020 and June 4, 2020.  Both letters referred to the Victim by the Victim's first and last name with one letter adding the words "suck-ass" and the other adding the word "Boy."  Neither mailing had a return address.  The April 10 mailing included the text, "I followed your ugly hermaphroditic dush-bag around the store last week!  She's so stupid, she didn't notice! Maybe she's a better target than you at least her or it first!!!  Then you next.  Battery Acid works good on skin + faces […] But I will strike you Both!  you fat pigs!! WAIT."[1]  The June 4 mailing included the text, "I'm still watching you, know the stores you go to.  your car is a nice black mercadies, Battery Acid in your bitches Face Works good, she will look better than she does now!  HA-HA   I'm going to get you."

      13.      WPD provided photographs of five previous mailings to the Victim with postmarks from approximately October 2018 to August 2020.  All of the mailings were

---

[1] The quoted text is unedited and as it appears in the letters.

addressed to the Victim at the Victim's Wallingford residence and none had a return address. Text from these mailings include, "You screwed with the wrong people! Waiting for the right night & time. Remember this is a promise, not a threat! Your worst night-mare will get you hard!" and "I'll get you. its payback time very soon keep wondering. Have a plan in a dark parking lot at the mall! Battery Acid […] HA-HA."

   14. On November 2, 2020, I received a report of a mailing the Victim received at the Victim's Wallingford address. WPD, the Wallingford Fire Department, Connecticut State Police, Connecticut Department of Energy and Environmental Protection, and I again responded because the mailing contained an unknown, powdery substance. The mailing postmarked October 31, 2020 also contained a newspaper clipping that had a cartoon drawing of a pig underneath with the text "HanBone's," which was determined to be associated with a closed restaurant in Hamden, Connecticut. The reverse side of the clipping also referred to a health care facility in Hamden. The text of the letter associated with this mailing included the words "HA! HA! Check out this powder!!!" The letter also states, "Are you checking you Auto Tail pipe lately? It's so easy to put an item up it and then the fun starts! I hope you take this as a joke, then it will be easy to get you on our Time […].? The letter continues, "I hope you liked the powder I used on the last envelope? powder or poison? What on and and in this envelope + letter. test it, maybe rat poison, you deserve it […] Vengence is served best when served when time go's by and the statute of limitations go's by  See you soon?"

   15. In light of the newspaper clipping being about Hamden, on November 4, 2020, I spoke with the Victim about whether the Victim recalled any interaction that may have been confrontational in nature in Hamden. The victim ultimately recalled an interaction occurring

in 2016 or 2017 on Sherman Avenue in Hamden as part of the Victim's work and it involving a person residing in Hamden. According to the Victim, the Hamden resident told the Victim something to the effect of "I'll get you."

16. On November 4, 2020, I coordinated with USPIS Dangerous Mail Investigations to hold and review the Victim's incoming U.S. Postal Service mail. The Victim had consented to law enforcement collecting and reviewing the Victim's incoming mail.

17. On or about November 4, 2020, HPD provided me with an incident report dated February 17, 2017 indicating that the Victim was at 110 Sherman Avenue, Hamden, (which is the Target Premises) and that the resident, Nicholas Sepesko, had contacted HPD to register a complaint against the Victim. The complaint alleged that Sepesko's door had been damaged; HPD found no damage to the door.

18. On November 10, 2020, I interviewed a person who provided care for Sepesko for approximately 15 years ending in or about 2017. The caregiver said that Sepesko rarely left his house and did not go to public places. Also, the caregiver indicated that he/she would drop off outgoing mail for Sepesko during the time he/she assisted Sepesko.

19. On November 18, 2020, Sepesko contacted the U.S. Postal Service and requested that his outgoing mail be picked up from his residence. A letter box is affixed to the Target Premises that Sepesko and the U.S. Postal Service use. The Postal Service contacted USPIS which contacted me. Serving as a U.S. Postal Service carrier, USPIS collected Sepesko's outgoing mail on November 18, 2020 from the letter box at the Target Premises. The mail included items that had Sepesko's name and return address on them.

One item of mail was an envelope addressed to the Victim at the Victim's residence. The mailing, with no return address, contained an unknown, powdery substance. The letter in the envelope included the following text, "you forgot me but we didn't forget you! I hope your thinking were not going to get you, so it make it easier to get your Asses! <u>Time is one our side</u>!!! and patients is a real virtue, so when we decide to nail you ass it will be our time. When you ass holes least expect it!!!" The letter states, "Keep check you auto tail pipe? Or you Tires? … How bout some more Rat poison? or some other highly toxic chemical for you to touch or breath. it's in the envelope and letter you just touched! Ricen? […] I put a present in the Envelope!!! HA-HA!"

20.   My understanding is that Sepesko at one time rented the first floor living area to a tenant. According to the USPIS, no one other than Sepesko currently receives mail at the Target Premises. Also, Sepesko's caregiver indicated in November 2020 that the caregiver believed Sepesko had been living alone and no longer had a tenant.

## Probable Cause

21.   Three letters addressed to the Victim containing an unknown, powdery substance lead to physical responses by local, state, and federal agencies, including at different times the FBI, Connecticut State Police, Connecticut Department of Energy and Environmental Protection, USPIS, and local fire, police, and public health departments on October 9 (mailing postmarked October 6, 2020), November 2 (mailing postmarked October 31, 2020), and November 18, 2020 (collected on November 18, 2020 but not postmarked). To ensure the safety of any victims, first responders, and forensic examiners, the mailings

had to be initially field screened for hazards.  Safety protocols, including wearing hazmat suits and respiratory protections were used.

22.     Following the initial screenings in each of the three incidents, the mailings with any contents were submitted to the Laboratory Response Network ("LRN") laboratory in Connecticut to be screened for other threats.  Each of the three mailings are now at the FBI Laboratory for further examination.  At this time, the October 6, 2020 mailing was found to contain a substance identified as calcium carbonate.  Laboratory results from the October 31 and November 18, 2020 mailings are pending.

23.     At least five handwritten letters to the Victim appear to have been written on an 8½" x 11" yellow-colored lined notepad, including the most recent letter on November 18, 2020.

24.     There is probable cause to believe and I do believe that Sepesko is the sender of the threatening letters to the Victim.  The most recent mailing was collected on November 18, 2020 from Sepesko's mailbox affixed to the Target Premises.  This mailing was addressed to the Victim at the Victim's Wallingford residence, it had no return address, and it was with other outgoing mail labeled with Sepesko's name and return address.

25.     Each of the three mailings that contained an unknown, powdery substance had American flag Forever stamps affixed to the envelope for postage.  The stamps were affixed upside down, that is, with the union down.  According to 4 U.S.C. § 8(a), and broadly known among the general public, the flag should never be displayed with the union down, except as a signal of dire distress in instances of extreme danger to life and property.  It is noteworthy that a total of four pieces of Sepesko's outgoing mail on November 18, 2020 had American

flag stamps affixed to them. Only the mailing addressed to the Victim had the flag in a union down orientation; the other three pieces of mail had the stamps properly affixed in the standard orientation with the union up.

26. Other mailings to the Victim included postcard stamps with "2019" and drawings of marine life (moray eel, fish, and sponges).

27. The mailing collected on November 18, 2020 from the mailbox at the Target Premises contained an unknown, powdery substance and specifically referenced "ricen," meaning ricin, and "highly toxic chemicals." Ricin is a toxin that is included on the Health and Human Services Select Agents and Toxins list due to its potential to pose a severe threat to both human and animal health. Ricin can be lethal in small quantities and there is no antidote for ricin.

28. My understanding is that Sepesko his generally housebound at the Target Premises. This is supported by Sepesko requesting that the U.S. Postal Service pick up his mail rather than his leaving the Target Premises to mail items. Sepesko has lived at the Target Premises long before these mailings are known to have begun in October 2018. I have not identified any changes in his residence. As such, there is probable cause to believe and I do believe that evidence and instrumentalities of Sepesko drafting and sending threatening letters in violation of the Subject Offenses will be in the Target Premises. The items to be seized are listed in Attachment B. This includes (a) handwritten letters or draft letters to the Victim, (b) papers and records containing the Victim's name, business name, and Wallingford address, (c) 8 ½" x 11" yellow-colored lined paper from a notepad, (d) American flag Forever postage stamps and postcard stamps with "2019" and drawings of marine life

(moray eel, fish, and sponges); (e) journal, notes, and reports about an incident on or about February 17, 2017 involving Sepesko and the Victim at the Target Premises, (f) Hamden area newspaper or circular with portions cut out that was included in the letter postmarked October 31, 2020 to the Victim, (g) items containing calcium carbonate such antacids, chalk, and lime, and (h) rodenticide (chemicals made for the purpose of killing rodents).

29.     Based on my experience and training, there are two common explanations for a specific reference to ricin in a mailing accompanied by an unknown, powdery substance. The first explanation is that sender believed that the powder was ricin and was threatening its use. The second explanation, which appears to be applicable here, is that the sender knew the substance was not ricin, but sent the letter with the intent to convey to the recipient false and misleading information that the powder contained a toxin, which conduct would constitute a violation of Chapter 10 of Title 18, United States Code, Section 175(a) – transfer and possession of a toxin for use as a weapon.

Request for Sealing

30.     I further request that the Court order that all papers in support of these applications, including the affidavit, criminal complaint, arrest warrant, and search warrants, be sealed until further order of the Court. Premature disclosure of this affidavit and the requested arrest warrant and search warrants may compromise the ongoing investigation, cause the suspect to flee in order to avoid apprehension, cause individuals to destroy physical evidence, alert Sepesko of the evidence developed to date, and jeopardize the safety of the source(s) of information. A copy of the search warrants will be delivered to Nicholas Sepesko when the warrant is executed as provided by law along with a copy of the arrest

warrant.

## Conclusion

31.     Based on the foregoing, I respectfully request that the Court issue the accompanying arrest warrant and search warrants.

Respectfully submitted,

SOUVLIS.JOHN.F
2020.12.04 09:24:41
-05'00'
_____
John T. Souvlis
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on December __4__, 2020 at New Haven, Connecticut.

Sarah A. L. Merriam, U.S.M.J.
Digitally signed by Sarah A. L. Merriam, U.S.M.J.
Date: 2020.12.04 13:09:16 -05'00'
_____
HON. SARAH A.L. MERRIAM
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1

**Property to Be Searched**

The Target Premises at 110 Sherman Avenue, Hamden, Connecticut 06518 is identified as plot 3030116000000 by the town of Hamden, Connecticut and is described as a two-story single-family wood shingle structure with the number "110" affixed to the exterior.

## ATTACHMENT A-2

**Person to Be Searched**

Nicholas Sepesko, born 1950, is approximately 5'11" tall, and resides at 110 Sherman Avenue, Hamden, Connecticut 06518.

2

# ATTACHMENT B

## Particular Items to be Seized

1. Handwritten letters or draft letters to the Victim.

2. Papers and records containing the Victim's name, business name, and Wallingford address.

3. 8 ½" x 11" yellow-colored lined paper from a notepad.

4. American flag Forever postage stamps and postcard stamps with "2019" and drawings of marine life (moray eel, fish, and sponges).

5. Journal, notes, and reports about an incident on or about February 17, 2017 involving Sepesko and the Victim at the Target Premises.

6. Hamden area newspaper or circular with portions cut out that was included in the letter postmarked October 31, 2020 to the Victim.

7. Items containing calcium carbonate such antacids, chalk, and lime.

8. Rodenticide (chemicals made for the purpose of killing rodents).

All evidence and instrumentalities used in violation of 18 U.S.C. §§ 876(c)(mailing a communication containing a threat to injure the person of the addressee or another) and 1038(a) (conveying false information and hoax).